## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ODYSSEY (III) DP X LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:13-CV-1433-JHE** |
| | ) |
| **PNC BANK, N.A., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION AND ORDER

### I.     Introduction

Plaintiff Odyssey (III) DP X LLC ("Odyssey") initiated this commercial dispute in the Circuit Court of Jefferson County against Defendants PNC Bank, N.A. ("PNC Bank") and PNC Financial Services Group, Inc. ("PNC Group") on July 3, 2013. (Doc. 1-1 at 2, 5).[1] PNC Bank and PNC Group (collectively, the "PNC Defendants") removed Odyssey's state court action to this court on August 2, 2013, on the basis of diversity jurisdiction. (Doc. 1 at 3 ¶ 5).

This matter is before the court on the objections and responses (Docs. 20, 21, 23, 24) of Odyssey and the PNC Defendants to Magistrate Judge John H. England,

---

[1]   All page references to Doc. 1-1 correspond with the court's CM/ECF numbering system.

III's report and recommendation (the "R&R")  (Doc. 18),[2] which proposes that PNC Bank's  Motion To Dismiss (Doc. 6) (the "PNC Bank's Motion") be granted in part and otherwise denied and that PNC Group's Motion To Dismiss (Doc. 7) (the "PNC Group's Motion") be granted. (Doc. 18 at 11).

PNC Bank's Motion and PNC Group's Motion were both filed on August 5, 2013. (Docs. 6, 7). Odyssey filed a collective opposition (Doc. 8) to both motions on August 19, 2013. The PNC Defendants jointly followed with their reply (Doc. 13) on August 26, 2013. On August 29, 2013, Odyssey filed a sur-reply. (Doc. 14).

The R&R was entered on February 14, 2014. (Doc. 18). Odyssey's objections (Doc. 20), and the PNC Bank's objections (Doc. 21) were filed on February 28, 2014. On March 10, 2014, the PNC Defendants filed a combined response (Doc. 23) to Odyssey's objections and, Odyssey likewise countered (Doc. 24) PNC Bank's objections.

The undersigned was  randomly drawn to review the R&R on March 18, 2014. (Doc. 27). The matter, therefore, is now under submission, and for the reasons explained below, the court **OVERRULES** all objections, and **ACCEPTS** Magistrate Judge England's R&R, as supplemented below.

---

[2]  The parties have not consented to the jurisdiction of the magistrate judge. Therefore, in accordance with 28 U.S.C. § 636(b), the magistrate judge entered a report and recommendation.

## II.     Standards

### A.     Rule 12(b)(6) Dismissal Standard

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion:  (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting Fed. R. Civ. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (setting forth general pleading requirements for a complaint to include providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid*." *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

## B.    District Court Review of Report and Recommendation

After conducting a "careful and complete" review of the findings and

recommendations, a district judge may accept, reject, or modify the magistrate judge's report and recommendation. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."); *Williams v. Wainwright*, 681 F.2d 732 (11th Cir. 1982) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982), *overruled on other grounds by Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996), *superceded by statute on other grounds as recognized by ACS Recovery Servs. Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012)).[3] The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (citing H.R. Rep. No. 94-1609, 94th Cong., 2nd Sess., reprinted in 1976 U.S.C.C.A.N. 6162, 6163). In

---

[3] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by a Unit B panel of the former Fifth Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n.4 (11th Cir. 2009) (discussing the continuing validity of *Nettles*).

contrast, those portions of the R&R to which no objection is made need only be reviewed for clear error. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).[4]

"Neither the Constitution nor the statute requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct." *United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) (internal quotation marks omitted) (quoting *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)). It is incumbent upon the parties to timely raise any objections that they may have regarding a magistrate judge's findings contained in a report and recommendation, as the failure to do so subsequently waives or abandons the issue, even if such matter was presented at the magistrate judge level. *See*, *e.g.*, *United States v. Pilati*, 627 F.3d 1360 at 1365 (11th Cir. 2010) ("While Pilati raised the issue of not being convicted of a qualifying offense before the magistrate judge, he did not

---

[4] *Macort* dealt only with the standard of review to be applied to a magistrate's factual findings, but the Supreme Court has held that there is no reason for the district court to apply a different standard to a magistrate's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). Thus, district courts in this circuit have routinely applied a clear-error standard to both. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373-74 (N.D. Ga. 2006) (collecting cases). This is to be contrasted with the standard of review on appeal, which distinguishes between the two. *See Monroe v. Thigpen*, 932 F.2d 1437, 1440 (11th Cir. 1991) (when a magistrate's findings of fact are adopted by the district court without objection, they are reviewed on appeal under a plain-error standard, but questions of law remain subject to *de novo* review).

raise this issue in his appeal to the district court. Thus, this argument has been waived or abandoned by his failure to raise it on appeal to the district court."). However, the district judge has discretion to consider <u>or</u> to decline to consider arguments that were not raised before the magistrate judge. *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006); *see also Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("Thus, we answer the question left open in *Stephens* and hold that a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.").

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*, 677 F.2d at 410 n.8. "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id.* at 410. Indeed, a contrary rule "would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." *Williams*, 557 F.3d at 1292 (internal quotation marks omitted) (quoting *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).

## III.   Analysis

### A.   Odyssey's Complaint[5]

Odyssey's complaint stems from its acquisition of the Northgate Village Shopping Center ("NVSC"), located in Gardendale, Alabama, and its efforts to redevelop that commercial area (the "NVSC Plan"). By way of several successor-in-interest transfers, PNC Bank eventually acquired the original mortgage and security agreement executed on January 10, 2007 (Doc. 6-1 at 2) (the "Mortgage") that provided Odyssey (as successor-in-interest to CRF-Gardendale, LLC) with funding for the purchase of NVSC.

Prior to the initiation of this action, Odyssey became involved in some state court litigation with Dollar Tree, an existing tenant affiliated with NVSC, when Odyssey was unable to timely construct a new location for Dollar Tree as previously promised. In an attempt to resolve their differences, Odyssey and Dollar Tree agreed to a second amendment (the "Second Amendment") of their preexisting lease agreement. This Second Amendment included two components applicable to Odyssey's lender, PNC Bank:  (1) PNC Bank's written consent to the Second Amendment (the "Consent Agreement"); and (2) PNC Bank's execution of a

---

[5] As neither side has objected to its contents, the court fashions the following summary largely upon the factual background contained in the R&R. (Doc. 18 at 2-6).

Subordination, Nondisturbance and Attornment agreement (the "Subordination Agreement").

Despite Odyssey's multiple attempts (beginning on October 1, 2012) to explain the importance of the Consent and Subordination Agreements and to secure PNC Bank's cooperation regarding them, PNC Bank never signed either document. On June 21, 2013, Odyssey notified PNC Bank of its intent to sell NVSC by way of a distressed sale to take place on June 27, 2013. PNC Bank first responded on June 25, 2013, that it would still need several weeks to decide what to do about the Consent and Subordination Agreements. PNC Bank then, one day later, provided Odyssey with a payoff figure and indicated that it needed to receive such amount no later than June 27, 2013.

This lawsuit by Odyssey followed shortly thereafter. Odyssey asserts three causes of action against the PNC Defendants. Count One is for tortious interference with a business relationship. Count Two is for breach of fiduciary duty. Count Three is for breach of contract (*i.e.*, specifically, the covenant of good faith and fair dealing).

### B.    PNC Bank's Motion

The R&R recommends that PNC Bank's Motion be granted as to Count Three, but denied with respect to Counts One and Two. Odyssey has objected to the

proposed dismissal of Count Three, and PNC Bank has objected to the recommended retention of Counts One and Two.

### 1. Odyssey's Objection

Relying <u>solely</u> upon *Eager Beaver Buick, Inc. v. Burt*, 503 So. 2d 819 (Ala. 1987), *overruled on other grounds by Elmore County Com'n v. Ragona*, 540 So. 2d 720 (Ala. 1989), Odyssey challenges the R&R on the basis that it can plausibly assert a claim for breach of the implied covenant of good faith against PNC Bank for its failure to execute (as opposed to its breach of certain provisions of) the Consent and Subordination Agreements. The court has studied *Eager Beaver* and agrees with Magistrate Judge England that, to the extent such precedent permits recovery on a breach of implied good faith contractual claim even in the absence of an underlying material breach,[6] *Eager Beaver*'s unique and, indeed, egregious circumstances of an

---

[6] As pointed out in the R&R, there are several Alabama authorities which have rejected a claim for breach of a covenant of good faith in the absence of "a breach of a specific, express term of the contract." (*See* Doc. 18 at 10 (collecting cases)); *see also Tanner v. Church's Fried Chicken, Inc.*, 582 So. 2d 449, 452 (Ala. 1991) ("The plaintiffs attempt to distinguish these two cases by arguing that the issue in those cases involved the <u>implied</u> obligation of good faith found in the Uniform Commercial Code, not an <u>express</u> obligation of good faith found in a written commercial contract, as in this case.") (emphasis added); *id.* ("The plaintiffs cite us to no Alabama authority suggesting that a written obligation of good faith would create a higher duty on a contracting party than that imposed by the law of contracts, and we have found none."). Odyssey has made no attempt to address the holdings of these various opinions that are at odds with its dubious position.

employer's ongoing bad faith treatment of an employee operating under a preexisting

employment contract are not comparably present here:

> As pointed out above, Eager Beaver did not explicitly fire Burt for refusing to falsify the certificates. Instead, as the trial court found, Eager Beaver made Burt's continued performance extremely difficult and burdensome. <u>Burt was told that he would either falsify the certificates or "we don't need you around here."</u> Burt testified that he was harassed to such an extent that he could not, as sales manager, keep up the morale of the dealership and the salesmen who supposedly worked under him. <u>He was accused of being disloyal and was told that he ought to be finding another job.</u> When Burt tendered his resignation on August 19, 1983, to be effective August 27, 1983, his resignation was rejected; however, he was told to wait to resign until another owner, Randall Robinson, returned from vacation. The next day, August 20, the president of Eager Beaver, Bill Penney, went by Burt's office and picked up a bulletin board and threw it into Burt's office. Burt threw it back out. The substance of this series of events and activity by Eager Beaver establishes that the plaintiff, Burt, was harassed and antagonized to the point that he was no longer able to perform his job. Eager Beaver is correct in its assertion that it was not the bare request that he perform an illegal act that caused Burt to resign. Rather, <u>it was the conduct on the part of Eager Beaver upon Burt's refusal to commit fraud that left him no choice but to resign.</u> Burt's testimony is clear that, were it not for the hindrance and interference with his performance by Eager Beaver, he would not have resigned.

503 So. 2d at 822 (emphasis added).

---

Additionally, at least one post-*Eager Beaver* decision has summarized that precedent to permit recovery for harassment as breach of a preexisting employment contract. *See Wright v. Dothan Chrysler Plymouth Dodge, Inc.*, 658 So. 2d 428, 430 (Ala. 1995) ("The harassment was found to be a breach of his employment contract with Eager Beaver Buick, and he was, therefore, allowed to recover for breach of contract, not for intentional interference with an employment contract.").

Not only do Odyssey's allegations of corporate malfeasance on the part of PNC Bank relate to inchoate agreements, but also they simply do not meet the level of bad faith described in *Eager Beaver*. Accordingly, the court **OVERRULES** Odyssey's *Eager Beaver*-driven objection, **ACCEPTS** the suggested ruling in the R&R, and will **DISMISS** Count Three.

### 2.      PNC Bank's Objections

#### a.      Odyssey's Tortious Interference Claim

PNC Bank contends that the R&R incorrectly proposes that Odyssey can plausibly state a claim for intentional interference with a business. (Doc. 21 at 1-4). In urging its contention, PNC Bank attempts to incorporate its Amended and Supplemental Motion To Dismiss (Doc. 19) (the "Amended Motion"), filed on February 25, 2014, as grounds for support.

This Amended Motion post-dates the issuance of (and therefore, is not addressed by) the R&R, and attaches a Modification Agreement which PNC Bank neglected to include in its first Motion. Relying upon *Colonial Bank v. Patterson*, 788 So. 2d 134 (Ala. 2000), *overruled on other grounds by White Sands Group, L.L.C. v. PRS II, LLC*, 32 So. 3d 5 (Ala. 2009), PNC Bank contends that the Modification Agreement absolves it of any cognizable claims for interference. (Doc. 21 at 2). The court **OVERRULES** PNC Bank's objections premised upon the Amended Motion

(and the attached Modification Agreement) as premature and/or not properly before this court. Alternatively, excusing the procedural quagmire created by PNC Bank, the court **OVERRULES** PNC Bank's *Patterson*-based objections connected to the Modification Agreement.

In seeking a dismissal of Count One, PNC Bank particularly relies upon the following language from *Patterson*:

> Colonial, acting under the authority of the contract signed by both Patterson and Nordness as signatories on the account, chose not to honor the counter check presented by Patterson. Patterson argues that the interference arose in regard to the separate relationship between Nordness and him, a relationship as to which, he says, Colonial was not a party. However, when tripartite relationships exist and disputes arise between two of the three parties, then a claim alleging interference by the third party that arises from conduct by the third party that is appropriate under its contract with the other two parties is not recognized. *Bama Budweiser*, 611 So. 2d at 247; *see, also, Ex parte Blue Cross & Blue Shield of Alabama*, 773 So. 2d 475 (Ala. 2000).

788 So. 2d at 138 (emphasis added).

However, *Patterson* is significantly factually dissimilar as it arises out of a checking transaction and involves "the dishonor of a counter check that Patterson presented to Colonial" that, according to the plaintiff, "Colonial dishonored . . . , as a means to accomplish an interference with Patterson and Nordness's stockholder relationship and their negotiations over the sale of stock." 788 So. 2d at 137. Further, the court is not persuaded that PNC Bank sits in a similar tripartite position with Odyssey and

Dollar Tree as Colonial Bank did with its two account signatories in *Patterson*.

*Patterson* is also procedurally distinguishable as it was decided on a fully developed trial record. *See id.* at 139 ("Patterson's claim alleging intentional interference with business relations was submitted to the jury, which returned a verdict in favor of Patterson, awarding him compensatory damages in the amount of $60,640, and punitive damages in the amount of $939,000."). In short, the court finds that *Patterson*'s striking dissimilarities do not render Odyssey's interference claim implausibly stated from a Rule 12(b)(6) standpoint.

### b.   Odyssey's Breach of Fiduciary Duty Claim

PNC Bank contends that the R&R incorrectly proposes that Odyssey can plausibly state a claim for breach of fiduciary duty. (Doc. 21 at 4-7). In promoting its position, PNC Bank again attempts to incorporate its Amended Motion as grounds for support. (Doc. 21 at 7). The court **OVERRULES** PNC Bank's objections premised upon the Amended Motion (and the attached Modification Agreement) as premature and/or not properly before this court.

Further, the court **OVERRULES** PNC Bank's separate objections premised upon *Power Equipment Co., Inc. v. First Alabama Bank*, 585 So. 2d 1291 (Ala. 1991). (Doc. 21 at 4-5). In particular, *Power* was dissimilarly decided on a summary judgment record.

14

As the *Power* court explained:

Although this Court has previously held that "other special circumstances" may create a fiduciary relationship, those circumstances have never been defined. However, the factors asserted by Power Equipment as having created a fiduciary relationship in this case are clearly not sufficient to support the inference that a fiduciary relationship existed.

    In essence, Power Equipment argues that one of the Bank's former officers was guilty of wrongdoing and that that fact gave rise to a fiduciary relationship. However, it is undisputed that Ferguson knew of the wrongful acts by the Bank's officer before he signed the note evidencing the $900,000 line of credit. If anything, this prior knowledge of wrongdoing should have caused distrust on the part of Power Equipment, not the confidence and reliance that is the cornerstone of a fiduciary relationship. Furthermore, Power Equipment's allegation that the FDIC had come in and "cleaned house" and that the Bank was under new management would certainly not have the effect of elevating the Bank to the level of a fiduciary in its relationship with Power Equipment. Therefore, we hold that the trial court properly entered summary judgment as to Power Equipment's claim of breach of a fiduciary relationship by the Bank.

585 So. 2d at 1298 (emphasis added).

Rule 12(b)(6) pleading sufficiency is not the equivalent of a Rule 56 triable inferences evidentiary standard. Therefore, *Power* does not render Odyssey's breach of fiduciary count implausibly alleged.

    Accordingly, the court **OVERRULES** PNC Bank's objections and **ACCEPTS** the suggested rulings in the R&R that PNC Bank's Motion be granted as to Count Three, but otherwise denied.

15

### C.    PNC Group's Motion

The R&R recommends that PNC Group be dismissed from Odyssey's lawsuit because no specific allegations of wrongdoing are asserted against it. (Doc. 18 at 11). Further, the R&R reasons that merely alleging PNC Group's status as the holding company of PNC Bank (Doc. 1-1 at 5-6 ¶¶ 2, 3) does not plausibly link PNC Group to potential liability under any of Odyssey's claims. *Id.*

In its objections, Odyssey insists that PNC Group is a proper party. (Doc. 20 at 6-7). More specifically, Odyssey relies upon the bare allegation that PNC Group, by way of succession, also held the Mortgage related to Odyssey's acquisition of NVSC (Doc. 1-1 at 6 ¶ 4 ("[A]s successors in interest . . . PNC Bank and PNC Group have acceded to the interest as Mortgagee pursuant to that Mortgage . . . .") and that, throughout its complaint, Odyssey has referenced both defendants collectively as "PNC." (Doc. 20 at 6 & n.2).

The court is not persuaded by Odyssey's objections for several reasons. First, Odyssey's position is devoid of <u>any</u> supporting legal authority. Under such circumstances, this court is not even obligated to address such a perfunctory and underdeveloped contention that it has plausibly alleged liability caused by PNC Group. *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to

16

elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

Second, the R&R explains by way of background that "Odyssey and PNC Bank's predecessor-in-interest, entered into a loan agreement . . . for $7.72 million dollars" (Doc. 18 at 2-3 (footnote omitted)), and that "[t]he loan was securitized by a mortgage in favor of PNC Bank's predecessor-in-interest." (*Id.* at 3). The R&R further notes that "[t]here is no dispute PNC Bank, as a successor-in-interest to Public Bank, via its acquisition of RBC Bank (USA), is a proper defendant in this action." (Doc. 18 at 2 n.2). Odyssey does not assert any specific objection to or otherwise seek in any manner to clarify these findings which unambiguously only identify PNC Bank as having a direct relationship with Odyssey by way of the Mortgage and the proposed Consent and Subordination Agreements. Therefore, Odyssey has waived the right to contrarily and conclusively insist by way of its ill-crafted objections that PNC Group is, nevertheless, a proper co-defendant in this action.

Third, simply lumpily pleading the PNC Defendants together in a procedurally disfavored combined fashion does not transform a non-plausible theory into a plausible one, even if a co-defendant's (*i.e.*, PNC Bank's) potential for liability has been sufficiently pled. *See, e.g., Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d

17

955, 979 (11th Cir. 2008) ("The complaint is a model 'shotgun' pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years, long before this lawsuit was filed."). Instead, *Twombly* and *Iqbal* demand that this court separately consider the viability of <u>each count</u> as alleged against <u>each defendant</u> when the pleading, without asserting any facts to plausibly support joint liability, alter ego, or some other similar legal construct, treats the co-defendants as one in the same.

Fourth, with respect to the tortious interference and breach of fiduciary claims that remain as a result of the court's analysis of PNC Bank's Motion above, Odyssey has offered no legal theory or alleged any facts "that allows the court to draw the reasonable inference that [PNC Group, merely by virtue of its unremarkable capacity as a holding company of PNC Bank,] is liable for the misconduct alleged." *Iqbal*, 565 U.S. at 678,129 S. Ct. at 1949.

Accordingly, the court **OVERRULES** Odyssey's objections and **ACCEPTS** the suggested ruling in the R&R that PNC Group's Motion be granted.

## IV.   Conclusion

For the reasons set out above, the court **OVERRULES** all objections and **ACCEPTS** the R&R as amplified herein. Accordingly, PNC Bank's Motion is **GRANTED** as to Count Three and is otherwise **DENIED**. Further PNC Group's Motion is **GRANTED**, and PNC Group is **HEREBY DISMISSED**. Finally, with the

18

objections to the R&R addressed by the undersigned, the case is **HEREBY REFERRED BACK** to Magistrate Judge England for further proceedings consistent with this memorandum opinion and order.

       **DONE** and **ORDERED** this the 19th day of May, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge